IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROY ADEY, WALTER ALLEN,
MICHAEL BAILEY, LARRY BARKLEY,
JOSEPH S. BUCHMELTER,
JEFFREY W. BURRIER, RONALD CONWAY,
MARK CRANE, TOM DiCARLANTONIO,
KEITH DICHAZI, DENNY GALOWNIA,
GEORGE GAUGHENBAUGH, RUSSELL GRAHAM,
MICHAEL HAWKINBERRY, RAYMOND HAYNES,
RICHARD HIRKALA, LARRY KEISTER,
LARRY KELLER, TERRY KNIGHT,
JAMES KRANAK, DONALD LONG,
ALAN LOWE, JAMES McCARDEL,
ROBERT McLAUGHLIN, RONALD MERRINGER,
PAUL MISCH, ROBERT MURRAY,
PATRICK NOSKO, MICHAEL PETERSON,
FRANK PORCO, LARRY POWELL,
BRADLEY RAVEAUX, FRANKLIN RECKNER,
HOMER RICHARDSON, JR., THOMAS ROMITTI,
MATT SATKOWSKI, JOHN SCHERICH,
BERNARD SMITH, ROGER L. SPARKS,
JOSEPH SPERLAZZA, BRETT THOMAS,
LAWRENCE TICE, ERIC L. TURNER,
GARY WEDGEWOOD, CLYDE WHIPKEY,
KEITH WHITE, RONALD WHITE,
RICHARD WILLIAMS and MICHAEL YOUNG,
adult individuals,

     Plaintiffs,

v.                              Civil Action No. 5:07CV18
                                                   (STAMP)

PENSION BENEFIT GUARANTY CORPORATION,

     Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT PENSION BENEFIT
GUARANTY CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

I. Procedural History

The above-styled civil action is before this Court as a result of an order of transfer by the United States District Court for the Western District Court of Pennsylvania pursuant to 28 U.S.C.

§ 1406(a). Forty-nine plaintiffs, represented by counsel, originally commenced this civil action on October 25, 2006, challenging decisions by the defendant that denied the plaintiffs access to pension benefits.

A status conference was held in this matter on July 20, 2009. At that conference, plaintiffs' counsel advised this Court that forty-eight of the plaintiffs wanted to discontinue litigation, and that Mr. Mark Crane was the only plaintiff who wished to continue prosecution of this case. Accordingly, on July 28, 2009, this Court entered a stipulation and order of court dismissing all claims and causes of action of each individual plaintiff, except for those claims and causes of action of plaintiff Mr. Crane. This Court then entered a scheduling order for the case to proceed.

Thereafter, on August 13, 2009, this Court entered an order granting plaintiffs' counsels' motion for leave to withdraw. The Court stayed this action for a period of thirty days to allow Mr. Crane to obtain new counsel. At the end of that period, however, no new counsel entered an appearance on behalf of Mr. Crane, and Mr. Crane was deemed to be proceeding pro se.[1]

Currently before this Court is the defendant's motion for summary judgment. The plaintiff filed a response to which the

---

[1] "Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

defendant replied.[2] This Court has carefully reviewed the parties' motions and related memoranda, and because the plaintiff is pro se, this Court has liberally construed the plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519 (1971) (holding pro se complaint to less stringent standards than formal pleadings drafted by lawyers). Nevertheless, for the reasons set forth below, this Court grants the defendant's motion for summary judgment.

## II. Facts

The plaintiff, Mr. Mark Crane, was hired by National Steel Corporation ("National") on October 5, 1973, at the Weirton Steel Division. During his employment, Mr. Crane became a participant in the Weirton Retirement Program ("National Plan"), a pension plan sponsored by National.

Mr. Crane was thereafter laid-off on October 11, 1981, and he remained laid-off when National sold the Weirton Steel Division to the Weirton Steel Corporation ("Weirton"). Effective as of the sale date, Weirton established a new plan entitled the Weirton

---

[2]On January 15, 2010, this Court granted the defendant's motion to file the supplemental administrative record relating to the determination of plaintiff Mr. Crane's pension benefits. Because the defendant's motion for summary judgment was filed prior to the filing of the supplemental administrative record, this Court allowed the parties to file supplemental briefs, which the parties both did. Also, while this Court was reviewing the defendant's motion for summary judgment, it became apparent that the original administrative record was not properly filed in October of 2007. Thus, this Court gave the plaintiff an opportunity to review that record and again file a supplemental response to the defendant's motion for summary judgment. The plaintiff filed a timely response, and the defendant also filed a reply. This Court, in deciding the defendant's motion for summary judgment, takes into consideration these supplemental briefs.

3

Plan, which was separate from the National Plan and only responsible for benefits accrued by Weirton Steel Division employees after May 1, 1983. These plans operated under separate documents, but included many similar terms.

Mr. Crane returned to employment at the Weirton facility on February 19, 1984, and after a 28-month layoff, began accruing benefits under the new Weirton Plan at that time.

Eventually, the National Plan was terminated, effective December 6, 2002, when National filed for bankruptcy protection. At that time, the defendant, Pension Benefit Guaranty Corporation ("PBGC")[3] assumed the responsibility of paying benefits under the plan.

Approximately one year later, Weirton also filed for bankruptcy protection, at which time, PBGC, Weirton officials, and members of the Weirton Plan's Retirement Committee ("Retirement Committee") discussed the termination of the Weirton Plan. PBGC eventually concluded that the Weirton Plan should be terminated, and on October 20, 2003, issued a Notice of Determination to both Weirton and the Retirement Committee. This Notice enclosed the Termination Agreement for Robert Rubicky ("Mr. Rubicky") of the Retirement Committee to sign. PBGC also filed a complaint seeking termination of the Weirton Plan, as well as published the Notice in

---

[3]PBGC is a wholly-owned federal corporation that administers a defined benefit pension plan termination insurance program created by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").

several newspapers where participants and beneficiaries under the Weirton Plan resided. Mr. Rubicky signed the Termination Agreement on behalf of the Retirement Committee, which PBGC then countersigned.

Pursuant to the Termination Agreement, PBGC became the Weirton Plan's statutory trustee. PBGC ultimately notified all participants that the Weirton Plan had been terminated and that PBGC had become its statutory trustee. PBGC also took over responsibility for paying benefits to all the Weirton employees participating in the plan. As part of the termination and benefit payment process, PBGC undertook several tasks, including assuming control over the Weirton Plan's assets from the liquidating Weirton.

Most relevant to this case, PBGC also began reviewing the Weirton Plan's record to determine the amount of guaranteed benefits owed to each participant. To do this, PBGC first looked to the terms of the Weirton Plan, which included two significant provisions. First, the Weirton Plan contained a "30-and-out" provision, which allows a participant to retire and receive his full pension benefit upon completing 30 years of credited service under the plan. Second, the Weirton Plan provided that an employee on layoff would continue to accrue pension credits for the first 24 months of the layoff period. Should the layoff continue for more than 24 months, however, the pension accruals would cease for the remainder of the layoff period. The pension accruals would then

5

resume if, and at the time, the employee was recalled from layoff and returned to work for Weirton.

In July of 2005, the union representing employees at the Weirton facility challenged the validity of the Termination Agreement by providing PBGC with affidavits from three former Retirement Committee members that each stated that the Retirement Committee did not authorize anyone to sign the Termination Agreement.

In July of 2006, PBGC issued benefit determinations to most of the original forty-nine plaintiffs in this action. PBGC determined that each individual's credited service, including the period of layoff during which each plaintiff earned only 24 months of service, was less than the 30 years of total pension service needed to qualify for the 30-year benefit. As provided in PBGC's regulation, the plaintiffs who had received their benefit determinations filed timely appeals with the PBGC Appeals Board ("Appeals Board"), each contending that PBGC had miscalculated his benefit entitlement by not granting a 30-year benefit. These plaintiffs also filed the above-styled civil action, alleging that PBGC's determination under the Weirton Plan was arbitrary and capricious ("Count I"), and that the Termination Agreement was invalid ("Count II").[4]

---

[4]This Court thereafter granted an order to stay this action pending completion of a consolidated appeal by the Appeals Board.

The Appeals Board issued a decision in June of 2007 finding that the plaintiffs had not met the service requirements for 30-year retirement benefits under the Weirton Plan due to their layoff from employment in excess of 24 months. The Appeals Board further determined that the issues relating to the Termination Agreement were not within the Appeals Board's jurisdiction. In its decision, the Appeals Board noted, however, that seven of the plaintiffs, including Mr. Crane, had not yet received Weirton Plan benefit determinations from PBGC. The Appeals Board, therefore, was unable to issue a final decision for these individuals.

This Court lifted the stay after the Appeals Board's decision. Following briefing on the issue, this Court entered a memorandum opinion and order holding that as to Count I (pension benefits), review was to be made under the "arbitrary and capricious" standard and based solely on the administrative record compiled by PBGC. Discovery thereafter proceeded on Count II (the Termination Agreement).

As discussed above, all of the plaintiffs except for Mr. Crane were eventually voluntarily dismissed from this case. On November 10, 2009, PBGC filed and served on Mr. Crane its motion for authorization to supplement the administrative record, which was later granted, and a copy of its supplemental volume. In this supplemental volume, it was documented that PBGC issued a benefit determination as to Mr. Crane, concluding that his length of service under the Weirton Plan was less than 30 years of total

pension service necessary to qualify for the 30-year benefit due to his layoff from employment for more than 24 months. Mr. Crane appealed, but the Appeals Board issued a decision affirming the determination.

### III. Applicable Law

A. Motion to Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The Court must perform a threshold inquiry to determine whether a trial is needed--whether, in other words, "there are any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 812 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. Administrative Procedure Act

The Administrative Procedure Act ("APA") states that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found" not to meet six separate

standards. See 5 U.S.C. § 706(2)(A)-(F). The statute requires that agency action be set aside if such action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if the action failed to meet statutory, procedural, or constitutional requirements. Id. at § 706(2)(A)-(D). "The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (rev'd on other grounds, Califano v. Sanders, 430 U.S. 99) (1977)).

It is well-established law that decisions of the PBGC are controlled by the APA. PBGC v. LTV Corp., 496 U.S. 633, 655-56 (1990). Accordingly, PBGC decisions "generally are reviewable under the standard set out in the Administrative Procedure Act," and "[a] decision of the PBGC must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Dycus v. Pension Benefit Guar. Corp., 133 F.3d 1367, 1369 (10th Cir. 1998) (citing § 706(2)(A)). See also Waters v. Pension Benefit Guar. Corp., 2002 WL 1775262 (E.D. Tenn. 2002) (unpublished) ("The standard of review for PBGC actions is whether the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' . . . [R]eview under the APA is limited to the administrative record in existence at the time of the decision under review.") (internal citations omitted).

10

## IV. Discussion

### A. Count I: Pension Benefits

Count I of the complaint alleges that PBGC wrongfully denied Mr. Crane 30-year benefits under the Weirton Plan due to an incorrect determination of his dates of service. Additionally, Mr. Crane argues that he is being discriminated against under federal law because other employees who were hired the same day as he was, and who are younger than he is, are receiving their pensions.

PBGC responds in its motion for summary judgment that it properly determined Mr. Crane's length of service, and that other participants receiving benefits could have had a shorter layoff period or be of greater age than Mr. Crane, both things that Mr. Crane fails to take into account in making his argument.

After a thorough review of the record, this Court holds that the decision of the PBGC Appeals Board is not arbitrary and capricious, and therefore, summary judgment on Count I should be granted. Pursuant to the Weirton Plan, a participant who is younger than 62 years of age and has at least 30 years of service is eligible for an unreduced 30-year benefit. Eligibility for the 30-year benefits is determined based on a participant's length of "Continuous Service" under the Weirton Plan. The Weirton Plan provided that: (1) Continuous Service encompasses periods of employment both with National prior to the asset sale and with Weirton after such sale; and (2) absences from work for periods of longer than two years normally constitute a break in Continuous

Service. The Weirton Plan also treated absences of more than two years as follows:

> (1) There shall be no deduction for any time lost which does not constitute a break in Continuous Service, except that in determining the length of Continuous Service for purposes of this Plan:
>
> (i) that portion of any absence which continues beyond two years from commencement of absence due to a layoff, physical disability or leave of absence <u>shall not be creditable as Continuous Service</u> . . . (emphasis added.

(Supp. Admin. Rec., AR001262, at 31).

PBGC records indicate that Mr. Crane was born on January 13, 1954, and hired by National on October 5, 1973. He was thereafter laid-off on October 11, 1981, and returned to work with Weirton on February 19, 1984. His period of layoff, therefore, was two years, four months, and six days. Mr. Crane was employed by Weirton when the Weirton Plan was terminated on October 21, 2003.

Based upon this information, the PBGC Appeals Board first determined that Mr. Crane did not receive Continuous Service credit for his entire layoff because it exceeded 24 months. Rather, under the Weirton Plan, only the first two years of his layoff (October 11, 1981 through October 10, 1983) was counted in determining his Continuous Service. Next, the Appeals Board determined that Mr. Crane earned Continuous Service for the following periods: (1) from his October 5, 1973 hire date until the 2-year "Layoff Service" ended on October 10, 1983, which is 10 years; and (2) from his February 19, 1984 rehire date until the Weirton Plan's October 21, 2003 termination date, which is 19 years and 8 months. (Supp.

Admin. Rec., AR001244, at 4). Because the total length of Mr. Crane's periods of Continuous Service was only 29 years and 8 months, the Appeals Board concluded that he was ineligible for the 30-year benefit. PBGC also found meritless Mr. Crane's argument that he should receive benefits for the entire period of layoff because National and Weirton had agreed that participants would retain their original "Start Date" for purposes of both Plans.

As to Mr. Crane's discrimination claim, the PBGC Appeals Board informed Mr. Crane that his observations concerning the benefits of other participants were not necessarily inconsistent with the Weirton Plan's terms. Indeed, the Appeals Boards explained that other Weirton Plan participants who started work the same day as Mr. Crane could have had a shorter layoff period or be receiving benefits due to their greater age. Thus, the Appeals Board dismissed any claim of discrimination.

This Court has reviewed the record, as well as the briefs submitted by the parties, and finds that the decision of PBGC is not arbitrary and capricious. Rather, PBGC's interpretation of the terms of the Weirton Plan is reasonable, and its application of such terms is sufficiently supported by the evidence. Accordingly, Mr. Crane is not eligible to receive the 30-year benefits as alleged in Count I. Summary judgment is therefore appropriate on this claim.

B.  Count II: Termination Agreement

In the original Count II of the complaint, the plaintiffs alleged that the Termination Agreement between PBGC and the Retirement Committee was invalid because Mr. Rubicky signed it without obtaining proper authorization. The plaintiffs argued that this unauthorized act deprived them of their pension benefits.

In its motion for summary judgment, PBGC argues that there is no evidence that the Retirement Committee members opposed the plan, and even if such evidence exists, the Termination Agreement would remain valid under the legal doctrines of ratification and apparent authority.

In his response to the motion for summary judgment, however, Mr. Crane admits that he is only proceeding on Count I of the complaint. Accordingly, PBGC's motion for summary judgment as to Count II of the complaint is granted as uncontested.

V.  Conclusion

For the reasons set forth above, PBGC's motion for summary judgment is GRANTED. It is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is advised that he must file a notice of appeal with the Clerk of this Court within 30 days after the date that the judgment order in this case is entered. See Fed. R. App. P. 4(a)(1).

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

DATED:    March 9, 2010

                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE